[Cite as *State v. Miller*, 2021-Ohio-3381.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                             Court of Appeals No.  WD-20-047

        Appellee                              Trial Court No.  2019CR0561

v.

Tyler Russell Miller                              **DECISION AND JUDGMENT**

        Appellant                             Decided:  September 24, 2021

* * * * *

Paul A. Dobson, Wood County Prosecuting Attorney, and
David T. Harold, Assistant Prosecuting Attorney, for appellee.

Lawrence A. Gold, for appellant

* * * * *

**ZMUDA, P.J.**

## I.    Introduction

{¶ 1} Appellant, T.M., appeals the judgment of the Wood County Court of

Common Pleas, sentencing him to life in prison without the possibility of parole after

accepting his guilty plea to aggravated murder. Finding no error in the proceedings below, we affirm.

**Facts and Procedural Background**

{¶ 2} Following transfer from the Wood County Juvenile Court, on December 18, 2019, appellant, a 16-year-old at the time of the underlying crime in this case, was indicted on one count of aggravated murder in violation of R.C. 2903.01(A), (F), and 2929.02(A), an unclassified felony. The state subsequently amended the indictment by deleting the reference to R.C. 2903.01(F) and replacing it with R.C. 2903.01(G). Appellant's defense counsel did not object to the amendment, but acknowledged that the incorrect statutory subsection was referenced in the original indictment based upon a scrivener's error. On December 20, 2019, appellant appeared before the trial court and entered a plea of not guilty by reason of insanity.

{¶ 3} On February 21, 2020, the matter proceeded to a hearing on appellant's insanity plea. At the hearing, the court received a report from the Court Diagnostic and Treatment Center ("CDTC"). Based upon its evaluation of appellant, CDTC found that he did not suffer from a mental disease or defect which rendered him incapable of knowing the wrongfulness of his act, and thus was not entitled to a finding of insanity. Upon receipt of the report, the trial court admitted it into evidence without objection, and the matter was continued.

{¶ 4} Thereafter, on April 23, 2020, appellant appeared before the trial court for a change of plea hearing. At the outset of the hearing, the court denied appellant's insanity plea based upon the findings articulated in CDTC's report.[1] After appellant's insanity plea was denied, appellant indicated his desire to enter a plea of guilty to the sole charge contained in the amended indictment. The trial court engaged appellant in a thorough Crim.R. 11 colloquy, after which it accepted appellant's guilty plea. At the end of the hearing, the court ordered the preparation of a presentence investigation report and scheduled the matter for sentencing on June 4, 2020.

{¶ 5} Prior to the sentencing hearing, on May 29, 2020, appellant's defense counsel filed a sentencing memorandum with the trial court. In the memorandum, defense counsel asked the trial court not to impose a sentence of life in prison without the possibility of parole, and offered appellant's youth and psychological condition as factors mitigating against such a sentence.

{¶ 6} Five days later, on June 4, 2020, appellant appeared before the trial court for sentencing. At the outset of the sentencing hearing, the state suggested to the court that, in order to impose a sentence of life in prison without the possibility of parole, it would need to recognize appellant's youth as a mitigating factor and make a finding that

---

[1] Appellant did not request any additional evaluations beyond that performed by CDTC.

3.

appellant was irreparably corrupt. In support of its position, the state cited our decision in *State v. Brown*, 6th Dist. Lucas No. L-16-1181, 2018-Ohio-132.

{¶ 7} Thereafter, the court noted its consideration of the presentence investigation report, letters that were submitted on behalf of the victim, materials from Toledo Hospital and Harbor Behavioral Health that were provided to the court by appellant's defense counsel, appellant's sentencing memorandum, the CDTC report, and "all other matters that were sent to the Court for its review." The court then heard statements from defense counsel, the state, and the victim's mother. Appellant declined to offer any mitigating statements on his own behalf.

{¶ 8} Upon consideration of the foregoing, the court found appellant to be irreparably corrupt. The court noted that appellant's age was a mitigating factor, but found that it was outweighed by appellant's inability to receive rehabilitative mental health treatment due to his aggressive behavior toward medical professionals, and also appellant's lack of any remorse over his criminal conduct and the harm it caused. The court further observed that appellant's medical evaluations revealed his "homicidal ideations," the fact that he wished to become a serial killer, and his past behavior involving the killing of animals and subsequently eating their eyes and hearts. The court then reviewed the conduct for which appellant was found guilty of aggravated murder, noting the premeditated nature of the stabbing that led to the death of the defenseless

4.

victim in this case. Ultimately, the court found that appellant "appear[ed] to be a cold-blooded, remorseless murderer."

{¶ 9} In its sentencing entry, the court reiterated the findings set forth above, and stated: "[T]his court finds that the Defendant's acts reflect irreparable corruption. This Court has looked for redeeming qualities of the Defendant, a hint of remorse and/or the possibility for rehabilitation and cannot find anything to indicate that is possible."

{¶ 10} Based upon its finding that appellant was irreparably corrupt, the trial court sentenced appellant to life in prison without the possibility of parole. In addition, the court ordered appellant to pay the costs of prosecution. Thereafter, appellant filed his timely notice of appeal.

## B. Assignments of Error

{¶ 11} On appeal, appellant assigns the following errors for our review:

I. Appellant received ineffective assistance of counsel in violation of his rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, §10 of the Constitution of the State of Ohio.

II. The court abused its discretion in sentencing Appellant, a juvenile, to life in prison without the possibility of parole, in prohibition of Appellant's rights under the Eighth Amendment of the United States Constitution and Article I, §9 of the Ohio Constitution to be free from the infliction of cruel and unusual punishment.

5.

## II.    Analysis

### A.    Ineffective Assistance of Counsel

{¶ 12} In his first assignment of error, appellant argues that he received ineffective assistance of trial counsel.  To demonstrate ineffective assistance of counsel, appellant must first show that trial counsel's representation "fell below an objective standard of reasonableness."  *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Because "effective assistance" may involve different approaches or strategies, our scrutiny of trial counsel's performance "must be highly deferential" with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 689.  Should appellant demonstrate her trial counsel's performance was defective, appellant must also demonstrate that prejudice resulted. *Bradley* at paragraph two of the syllabus.

{¶ 13} Here, appellant argues that his trial counsel was ineffective for failing to (1) engage in motion practice, (2) challenge the constitutionality of appellant's bindover from juvenile court under R.C. 2152.10 and 2152.12, and (3) request a waiver of costs that were imposed under R.C. 2947.23 due to appellant's permanent indigency status. Appellant's first two arguments challenge trial counsel's performance prior to the entry of appellant's guilty plea in this case.  This is important to note, because the Ohio Supreme Court has said that

6.

[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea.

*State v. Spates*, 64 Ohio St.3d 269, 272, 595 N.E.2d 351 (1992).

{¶ 14} In *State v. Rivera*, 6th Dist. Wood No. WD-19-086, 2021-Ohio-1343, we recognized the foregoing principle in a case involving a claim of ineffective assistance of counsel, and stated: "a defendant's guilty plea waives the right to assert an ineffective-assistance-of-counsel claim unless the defendant argues that 'counsel's errors affected the knowing and voluntary character of the plea.'" *Id.* at ¶ 10, quoting *State v. Green*, 11th Dist. Trumbull No. 2017-Ohio-0073, 2018-Ohio-3536, ¶ 18-19. In another case, which we cited in our decision in *Rivera*, the Tenth District addressed the defendant's arguments that counsel was ineffective for failing to conduct an adequate investigation of the facts of the case and not objecting to the joinder of unrelated cases. *State v. Hill*, 10th Dist. Franklin No. 10AP-634, 2011-Ohio-2869, ¶ 14. The court in *Hill* refused to consider these ineffective assistance arguments, because they were not related to the knowing or voluntary nature of the defendant's guilty plea. *Id.* at ¶ 15.

7.

{¶ 15} Similarly, in his first two arguments in support of his ineffective assistance claim in this case, appellant raises matters that occurred prior to his entry of a guilty plea. These arguments, relating to trial counsel's allegedly inadequate motion practice and failure to challenge appellant's bindover from juvenile court, do not challenge the knowing and voluntary nature of his plea. Therefore, we find these arguments waived, and we need not address them further.

{¶ 16} We now turn to appellant's third argument, that trial counsel was ineffective for failing to request a waiver of costs. In its sentencing entry, the trial court's imposition of costs was limited to the costs of prosecution. Under R.C. 2947.23(A)(1)(a), trial courts "shall include in the sentence the costs of prosecution * * * and render a judgment against the defendant for such costs." The statute "requires a trial court to impose the costs of prosecution against all convicted defendants." *State v. Davis*, 159 Ohio St.3d 31, 2020-Ohio-309, 146 N.E.3d 560, ¶ 13. However, the statute also "allows a trial court to waive the costs of prosecution at any time after sentencing." *Id*. at ¶ 4, citing R.C. 2947.23(C) ("The court retains jurisdiction to waive, suspend, or modify the payment of the costs of prosecution * * * at the time of sentencing or at any time thereafter.").

{¶ 17} In his brief, appellant argues that his trial counsel should have sought a waiver of the payment of his costs of prosecution at sentencing, because he is indigent

8.

and is not likely to be able to pay such costs given his sentence of life in prison without the possibility of parole. We disagree.

{¶ 18} We have previously considered whether trial counsel's failure to seek a waiver of the costs of prosecution at the time of sentencing constitutes deficient performance. Recently, in *State v. Holt*, 6th Dist. Lucas No. L-19-1101, 2020-Ohio-6650, we stated: "Because defendants have 'flexibility' under R.C. 2947.23(C) as to when to request a waiver, the decision not to request a waiver at sentencing and instead to postpone it until later has been found to be a matter of trial strategy." *Id.* at ¶ 8, citing *State v. Eblin*, 5th Dist. Muskingum No. CT2019-0036, 2020-Ohio-1216, ¶ 16; *see also State v. Pultz*, 6th Dist. Wood No. WD-14-083, 2016-Ohio-329, ¶ 61 ("[T]he decision of when to file the motion to waive the payment of costs can be a matter of trial strategy."), *State v. Moore*, 6th Dist. Erie No. E-19-009, 2019-Ohio-4609, ¶ 14 ("[T]he timing of a motion, seeking waiver of payment, is a matter of trial strategy."), and *State v. Southam*, 6th Dist. Fulton No. F-18-004, 2018-Ohio-5288, ¶ 67-68 (rejecting ineffective assistance argument and finding that trial counsel's failure to request a waiver of the costs of prosecution was a matter of trial strategy and thus did not constitute deficient performance). In *Holt*, we noted that Holt's trial counsel was focused upon persuading the trial court that Holt was a candidate for probation and thus stressed Holt's redeeming qualities and rehabilitative efforts rather than his economic situation. *Id.* at ¶ 9. We found that this was a strategic decision that does not give rise to a claim of ineffective

9.

assistance of counsel under the first prong of the *Bradley* test. *Id.*, citing *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 101 ("Trial strategy and even debatable trial tactics do not establish ineffective assistance of counsel.").

{¶ 19} Similarly, in this case, we find that trial counsel's decision not to seek a waiver of the costs of prosecution at sentencing was a matter of trial strategy. Here, appellant's trial counsel advocated on behalf of appellant at sentencing in such a way that the trial court's attention was drawn to appellant's age and lack of mental development. Trial counsel made this tactical decision in order to convince the trial court to impose a sentence that included the possibility of parole for appellant. Rather than focus the argument around whether appellant would ever have the means to pay the costs of his prosecution, trial counsel elected to advocate for a sentence that might allow appellant to be released from incarceration. Consistent with our decision in *Holt*, we find that this tactical decision does not rise to the level of deficient performance under *Bradley*, and we therefore reject appellant's argument that trial counsel was ineffective for failing to request a waiver of the costs of prosecution.

{¶ 20} Accordingly, appellant's first assignment of error is not well-taken.

### B.    Sentencing Considerations

{¶ 21} In his second assignment of error, appellant raises the constitutionality of his prison sentence, stating that the sentence violates his rights under the Eighth Amendment to the United States Constitution and the corresponding provision in the

10.

Ohio Constitution, which prohibit cruel and unusual punishment. While he seemingly asserts a constitutional argument in the language he uses in his assignment of error, the argument he actually advances in the body of his brief in support of his second assignment of error is not constitutional in nature. Instead, appellant's argument challenges the trial court's finding that he is "irreparably corrupt." Appellant argues that the trial court's finding that he is irreparably corrupt was not based upon a proper analysis of "the multiple factors that must be considered prior to ordering a sentence that should rarely be imposed."

{¶ 22} Under App.R. 12(A)(2), we may disregard an assignment of error presented for review if the party raising it fails to argue it separately in the appellate brief. Appellant fails to argue the constitutional issue he raises in his second assignment of error, and we would therefore be justified in disregarding the second assignment of error outright. Nonetheless, in the interests of justice, we elect to address the merits of the argument appellant makes in the body of his brief. *See Barksdale v. Van's Auto Sales, Inc.*, 38 Ohio St.3d 127, 128, 527 N.E.2d 284, (1988) (noting that a "basic tenet of Ohio jurisprudence [is] that cases should be determined on their merits and not on mere procedural technicalities") and App.R. 12(A)(1)(b) (instructing appellate courts to determine appeals on the merits).

{¶ 23} The Eighth Amendment to the United States Constitution states, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual

11.

punishments inflicted." "Central to the Constitution's prohibition against cruel and unusual punishment is the precept of justice that punishment for crime should be graduated and proportioned to [the] offense." *See In re C.P.*, 131 Ohio St.3d 513, 2012-Ohio-1446, 967 N.E.2d 729, ¶ 25, quoting *Weems v. U.S.*, 217 U.S. 349, 367, 30 S.Ct. 544, 54 L.Ed. 793 (1910).

{¶ 24} In the context of juvenile offenders, the United States Supreme Court has held that the Eighth Amendment prohibits the imposition of the death penalty and the imposition of life without the possibility of parole for nonhomicide offenses. *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005); *Graham v. Florida*, 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010). In addition, the United States Supreme Court has previously struck as unconstitutional a statutory scheme providing for a *mandatory* sentence of life without the possibility of parole for juvenile offenders. *Miller v. Alabama*, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). However, discretionary sentences of life in prison without the possibility for parole is permissible for "the rare juvenile offender whose crime reflects irreparable corruption." *Roper* at 573; *see also Montgomery v. Louisiana*, 577 U.S. 190, 209, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016) ("*Miller* did bar life without parole, however, for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility.").[2]

---

[2] The case law uses the terms "permanently corrupt" and "permanent incorrigibility" interchangeably to convey the idea that the juvenile offender is, at the time of sentencing,

12.

{¶ 25} In *State v. Long*, 138 Ohio St.3d 478, 2014-Ohio-849, 8 N.E.3d 890, the Ohio Supreme Court examined the United States Supreme Court's decisions in *Roper*, *Graham*, *Miller*, and *Montgomery*, to determine whether a trial court violates the Eighth Amendment to the United States Constitution when it sentences a juvenile offender to life in prison without the possibility of parole. The court found that such a sentence could be imposed on a juvenile offender under R.C. 2929.03(A), but only after consideration of the youth of the offender as a mitigating factor. *Id.* at paragraph one of the syllabus.

{¶ 26} Seven years after *Long* was decided, on April 22, 2021, the United States Supreme Court issued its decision in *Jones v. Mississippi*, --- U.S. ----, 141 S.Ct. 1307, 209 L.Ed.2d 390 (2021). There, the court clarified *Miller* and its progeny and held that a sentence of life in prison without the possibility of parole may be imposed without a separate factual finding that the juvenile offender is permanently incorrigible. "In other words, per *Jones*, the sentencer is not required to provide an on-the-record sentencing explanation containing an implicit (or explicit) finding of the offender's permanent incorrigibility." *State v. Tirado*, 858 S.E.2d 628, 2021-NCCOA-291, ¶ 25, citing *Jones* at 1321. Instead, the imposition of a sentence of life in prison without the possibility of parole for juvenile offenders "requires *only* a discretionary sentencing process for

---

"'beyond redemption, and thus unfit ever to reenter society, notwithstanding the diminished culpability and greater prospects for reform that ordinarily distinguish juveniles from adults.'" *State v. Brown*, 6th Dist. Lucas No. L-16-1181, 2018-Ohio-132, ¶ 38, quoting *People v. Palafox*, 231 Cal.App.4th 68, 91, 179 Cal.Rptr.3d 789 (2014).

13.

juvenile offenders." (Emphasis sic.) *Wynn v. State*, AL Court of Criminal Appeals No. CR-19-0589, --- So.3d ----, 2021 WL 2177656 *9 (May 28, 2021). However, the court in *Jones* was careful to explain that its decision

> does not preclude the States from imposing additional sentencing limits in cases involving defendants under 18 convicted of murder. States may categorically prohibit life without parole for all offenders under 18. Or States may require sentencers to make extra factual findings before sentencing an offender under 18 to life without parole. Or States may direct sentencers to formally explain on the record why a life-without-parole sentence is appropriate notwithstanding the defendant's youth. States may also establish rigorous proportionality or other substantive appellate review of life-without-parole sentences. All of those options, and others, remain available to the States.

*Jones* at 1323.

{¶ 27} Taken together, the foregoing cases establish that sentencing juveniles to life in prison without the possibility of parole for aggravated murder is permissible under the United States Constitution and the Ohio Constitution so long as (1) the sentence may be imposed at the sentencing court's discretion, (2) the juvenile offender committed a crime that reflects the offender's permanent incorrigibility, which the court is not required to separately articulate, and (3) the sentencing court takes the mitigating factor

14.

of the juvenile's age into consideration when exercising its discretion and explains its reasoning for imposing the most serious sentence. Here, each of the three requirements is met.

{¶ 28} Here, appellant was convicted of aggravated murder in violation of R.C. 2903.01(A), (G), and 2929.02(A). Under the version of R.C. 2929.02(A) that was in effect at the time of appellant's sentence, whoever pleads guilty to aggravated murder in violation of R.C. 2903.01 "shall * * * be imprisoned for life, as determined pursuant to sections 2929.022, 2929.03, and 2929.04 of the Revised Code."[3] If, like in this case, the defendant's aggravated murder charge is not accompanied by aggravating specifications under R.C. 2929.04(A), the trial court has four sentencing options from which to choose. These include life in prison without parole, life imprisonment with parole eligibility after 20 years in prison, life imprisonment with parole eligibility after 25 years in prison, and life imprisonment with parole eligibility after 30 years in prison. R.C. 2929.03(A)(1).

---

[3] R.C. 2929.02(A) was amended by the General Assembly, effective April 12, 2021, and now specifies that "no person who is not found to have been eighteen years of age or older at the time of the commission of the offense shall be imprisoned for life without parole." However, because appellant was sentenced prior to the effective date of this amendment, the foregoing language does not apply to him. R.C. 1.58(B); *see also McIntyre v. Hooks*, 162 Ohio St.3d 213, 2020-Ohio-3529, 165 N.E.3d 229, ¶ 10 (applying R.C. 1.58(B) in the context of reduced sentences provided under H.B. 86 and finding that "a person who received a penalty or punishment prior to the effective date of H.B. 86 is not eligible to receive an H.B. 86 lesser penalty or punishment.").

{¶ 29} In *Long*, the Ohio Supreme Court found that the foregoing sentencing procedure under R.C. 2929.03(A) is discretionary, and thus "does not run afoul of *Miller*." *Long* at ¶ 19. Thus, the first requirement (that the sentence of life in prison without the possibility of parole may be imposed at the sentencing court's discretion) is met.

{¶ 30} As to the second requirement, the trial court made a specific finding at sentencing that appellant is irreparably corrupt, even though it was not required to do so in light of *Jones*. Under *Jones*, "unless the record affirmatively reflects otherwise, the trial court will be deemed to have considered the relevant criteria, such as mitigating circumstances, enumerated in the sentencing rules." *Jones* at 1321. But here, the court did more than was required when it reviewed appellant's conduct, highlighting the heinous nature of appellant's premeditated stabbing of a defenseless victim "20 to 25 times," and described appellant as a "cold-blooded, remorseless murderer."

{¶ 31} Finally, the trial court complied with the third requirement when it expressly considered appellant's age as a mitigating factor, and stated: "I would agree that the most severe penalties should be rarely imposed on juveniles. So, again, that [is] not missed here, the Court is considering your age as a mitigating factor." Notwithstanding appellant's youth, the court found that the seriousness of the offense and appellant's likelihood of recidivism (given his complete lack of remorse and fantasizing about becoming a serial killer) weighed in favor of a finding that appellant is irreparably

16.

corrupt and an attendant sentence of life in prison with the possibility of parole. This finding was supported by the record, including appellant's failure to acknowledge fault or express any remorse at sentencing despite being provided an opportunity to do so.

{¶ 32} Based upon the foregoing, we find that the trial court properly sentenced appellant to life in prison without the possibility of parole in this case. Having considered the entire record in this case, and in light of the trial court's thorough examination of the relevant sentencing criteria and its application of such criteria to the facts of this case, we reject appellant's assertion that the trial court abused its discretion at sentencing, and we thus find appellant's second assignment of error is not well-taken.

## Conclusion

{¶ 33} In light of the foregoing, the judgment of the Wood County Court of Common Pleas is affirmed. The costs of this appeal are assessed to appellant under App.R. 24.

Judgment Affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Thomas J. Osowik, J.

Gene A. Zmuda, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.